**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JAMES A. MEHLING, et al.** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 99-5417** |
| | : | |
| **NEW YORK LIFE INSURANCE CO., et al.** | : | |

**MEMORANDUM AND ORDER**

Kauffman, J.                                                      October  24 , 2007

Now before the Court is Plaintiffs' Unopposed Motion for Entry of an Order with

Respect to Certification of Modified Settlement Class and Notice and Hearing on Proposed Class

Action Settlement (hereinafter "Motion").  In the Motion, Plaintiffs represent that both parties

seek preliminary approval of the proposed Settlement (hereinafter "Settlement"), certification of

a modified settlement class, and approval of the agreed-upon notice of the Settlement.  For the

reasons discussed below, Plaintiffs' Motion will be granted.


**I. BACKGROUND**

The Court will recite only the facts relevant to resolving this Motion.  Defendant New

York Life Insurance Company (hereinafter "NYL") is a life insurance company that, at all times

relevant to this litigation, maintained Pension Plans and 401(k) Plans (collectively, the "Plans")

for its employees.  Both Plans are managed by the same Board of Trustees, also named as a

Defendant.  Plaintiffs are former and current employees and agents of NYL.[1]  According to

_____

[1]       On November 1, 2001, this Court certified Plaintiffs as a class defined as follows:
"All persons, other than defendants and other individuals who are important to the defense of this

Plaintiffs, the Board of Trustees was induced by NYL employees to invest assets of the Plans into NYL-owned mutual funds.  Plaintiffs allege that this improper investment caused financial harm to the Plans in the form of excessive service fees and lowered rates of return on investment, and to the individual Plaintiffs in the form of less secure pension and welfare benefits as well as reductions to the amounts in the 401(k) Plans.  Defendants' alleged breach of fiduciary duty to the Plans and Plan participants gave rise to the instant litigation.

Plaintiffs filed the original Complaint on November 1, 1999, the First Amended Complaint on June 14, 2000, and the Second Amended Complaint on July 25, 2000.  After this Court dismissed several counts of the Second Amended Complaint on March 29, 2001, Plaintiffs filed a Third Amended Complaint on May 7, 2002, and then a Revised Third Amended Complaint on February 20, 2003.  The Revised Third Amended Complaint alleged violations of the Racketeer Influenced and Corrupt Organizations Act (hereinafter "RICO"), 18 U.S.C. § 1961 et seq. and the Employee Retirement Income Security Act (hereinafter "ERISA"), 29 U.S.C. § 1001 et seq.  However, on July 13, 2005, this Court dismissed Plaintiffs' RICO claims, leaving only the ERISA counts in the Revised Third Amended Complaint.  Thereafter, the parties began negotiating a possible settlement in a process overseen by Magistrate Judge Jacob P. Hart.  The parties signed the Settlement Agreement on March 22, 2007.

------

action, who either (a) are current participants or beneficiaries of the New York Life Insurance Company Pension Plan and the NYLIC Retirement Plan [the "Pension Plans"]; or [(b)] have been participants or beneficiaries of the New York Life Insurance Employee Progress Sharing Investment Plan and the New York Life Insurance Agents Sharing Investment Plan [the "401(k) Plans"] at any time since January 1, 1994."

## II.  PRELIMINARY APPROVAL OF THE SETTLEMENT

### A.  Legal Standard

The ultimate approval of a class action settlement depends on "whether the settlement is fair, adequate, and reasonable."  Walsh v. Great Atl. & Pac. Tea Co., 726 F.2d 956, 965 (3d Cir. 1983).  In evaluating a proposed settlement for preliminary approval, however, the Court is required to determine only whether "the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys, and whether it appears to fall within the range of possible approval."  Thomas v. NCO Fin. Sys., 2002 U.S. Dist. LEXIS 14157, at *14 (E.D. Pa. July 31, 2002) (citing In re Prudential Sec. Inc. Ltd. P'ships Litig., 163 F.R.D. 200, 209 (S.D.N.Y. 1995)).  At this stage, the Court "need not reach any ultimate conclusions on the issues of fact and law that underlie the merits of the dispute."  Id. (citing Detroit v. Grinnell Corp., 495 F.2d 448, 456 (2d Cir. 1974)).  A common inquiry is whether the proposed settlement is the result of "arms-length negotiations."  Id.; Tenuto v. Transworld Sys., Inc., 2001 U.S. Dist. LEXIS 17694, at *3 (E.D. Pa. Oct. 31, 2001).  After a preliminary determination as to the fairness of the Settlement, the Court must direct notice to class members and hold a final fairness hearing before formally approving the settlement.  See Manual for Complex Litigation (Fourth) § 21.632 (2004).

### B.  Grounds for Preliminary Approval

Upon final approval of the Settlement, Plaintiffs agree to release all claims asserted against Defendants and all claims that might have been asserted with regard to the conduct alleged in this case.  Plaintiffs offer three reasons why the Settlement meets the requirements for

preliminary approval.  First, it will provide Plaintiffs with substantial relief in the form of

individual monetary payments and prospective relief to ensure that the Plans make proper

investment decisions in the future.  Second, it is the result of lengthy, arms-length negotiations

overseen by Magistrate Judge Hart.  Third, independent fiduciaries have reviewed and approved

the terms of the Settlement.

### 1.  Substantial Relief

Under the Settlement, Defendants and/or their insurers will pay a total gross amount of

$14,000,000,[2] 70% of which (equal to $9.8 million plus interest) will be allocated to the 401(k)

Plans and then distributed to the eligible current and former participants of the 401(k) Plans who

had account balances at any time between January 1, 1994 and December 31, 2005.[3]  The

remainder of the settlement amount, 30% (equal to $4.2 million plus interest), will be allocated

between the Employees' Pension Plan and the Agents' Pension Plan.  After Court-approved

payments of attorneys' fees and expenses,[4] administrative expenses, and Named Plaintiffs'

---

[2]    This amount was deposited into an interest-bearing settlement escrow account on or about April 2, 2007.  It has accrued interest of approximately $230,000 since that date.

[3]    After Court-approved payments of attorneys' fees and expenses, administrative expenses, and Named Plaintiffs' compensation, the net amount allocated to the 401(k) Plans will be distributed to individual beneficiaries who had account balances in either of the 401(k) Plans at any time between January 1, 1994 and December 31, 2005.  Pursuant to the proposed Plan of Allocation, the distribution will be made on a pro rata basis, subject to a $50 minimum and a $1,000 maximum for each eligible class member.

[4]    According to the Settlement, the amount of attorneys' fees for class counsel shall not exceed 33% of the gross settlement fund.  This amount does not appear facially unreasonable. See, e.g., In re Smithkline Beckman Corp. Sec. Litig., 751 F. Supp. 525, 533-34 (E.D. Pa. 1990) (the court approved a 25% award for a $22,769,000 fund and noted that courts have approved attorneys' fees of 19% to 45% in common fund cases).

compensation,[5] the settlement amount for the Pension Plans will be allocated 55.283% to the Employees' Pension Plan and 44.717% to the Agents' Pension Plan. These funds will not be used to increase benefits paid to individual class members but instead will be used to strengthen the funding of Pension Plans.

Additionally, Defendants have agreed to provide prospective relief to safeguard the interests of the class members. The trustees of the Plans will utilize an independent advisor to provide advice to the trustees regarding appropriate investments for each of the Plans. The independent advisor will be retained through May 30, 2010.

### 2. Arms-Length Negotiations

Plaintiffs explain that the Settlement is the result of a hard-fought and lengthy negotiation process overseen by Magistrate Judge Hart that lasted from 2005 to 2006. After the principal settlement terms were reached in June 2006, the parties investigated and continued to negotiate the methods for allocating the settlement proceeds to class members.

### 3. Independent Review

Finally, as a condition of the Settlement, the current trustees of the Plans have engaged the services of independent fiduciaries to review the terms of the Settlement and to determine whether the Plans should release any claims in exchange for the settlement benefits. The independent fiduciaries have determined that it is appropriate for the Plans to accept the terms of the Settlement, including the release of all claims against Defendants.

---

[5] Named Plaintiffs Lee A. Bowers and Frances B. Maane are participants in the Plans. Former Named Plaintiff Mark B. Hathaway is deceased. According to the Settlement, Bowers will receive an amount not to exceed $7,500, and Manne will receive an amount not to exceed $15,000. As with all other aspects of the Settlement, the Court will consider any arguments as to the fairness of the proposed compensation at the Settlement Hearing.

### C. Conclusion

Based on the representations of the parties, the Court finds no reason to doubt the fairness of the Settlement. Rather, the Settlement appears to fall within the possible range of approval. Both sides have engaged in arms-length negotiations supervised by Magistrate Judge Hart to reach an independently-reviewed settlement that affords substantial relief to the proposed settlement class, and the appointment of an independent advisor to the Plans will provide significant prospective relief to Plan participants.

## III. CERTIFICATION OF THE SETTLEMENT CLASS

Plaintiffs' Motion also requests certification of the proposed settlement class, which modifies the stipulated class definition approved by this Court's Order on November 1, 2001. The proposed settlement class is defined as follows:

> (a) all persons, other than Defendants, who were participants as of December 31, 2005 in the New York Life Insurance Company Pension Plan or the Nylic Retirement Plan, including (i) beneficiaries of deceased participants who, as of December 31, 2005, were receiving benefit payments or will be entitled to receive benefit payments in the future, and (ii) alternate payees under a Qualified Domestic Relations Order who, as of December 31, 2005, were receiving benefit payments or will be entitled to receive benefit payments in the future; and (b) all persons, other than Defendants, who have been participants or beneficiaries in either the Employees 401(k) Plan or the Agents 401(k) Plan and had account balances in either plan at any time between January 1, 1994 and December 31, 2005.

According to the parties, this definition presents a few minor changes to the definition from the Court's November 1, 2001 Order. With respect to the Pension Plan participants, the modified settlement class definition sets a date for determining who will be members of the class and makes eligibility provisions for beneficiaries of participants and alternate payees under Qualified

-6-

Domestic Relations Orders.  With respect to the 401(k) Plan participants, the modified definition

sets an end date for class membership and excludes those who nominally participated in the

401(k) Plans but did not have an account balance at any point during the period from January 1,

1994 to December 31, 2005.

Plaintiffs explain that this litigation, which involves Defendants' alleged violations of

fiduciary duty under ERISA, involves questions of fact and law common to all members of the

class.  As the Third Circuit has explained, "Settlement classes must satisfy the Rule 23(a)

requirements of numerosity, commonality, typicality, and adequacy of representation, as well as

the relevant 23(b) requirements."  In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab.

Litig., 55 F.3d 768, 778 (3d Cir. 1995); see also Amchem Prods. v. Windsor, 521 U.S. 591, 620

(1997) ("Confronted with a request for settlement-only class certification, a district court need

not inquire whether the case, if tried, would present intractable management problems . . . for the

proposal is that there be no trial.  But other specifications of the rule—those designed to protect

absentees by blocking unwarranted or overbroad class definitions—demand undiluted, even

heightened, attention in the settlement context." (citation omitted)).  Because the settlement class

has changed since the Court's original class certification, and given the considerable time that

has elapsed since that certification, the Court will engage in the required Rule 23 analysis before

certifying the settlement class.

### A.  Rule 23(a) Requirements

Federal Rule of Civil Procedure 23(a) requires that the four following factors be satisfied

by any proposed class:

One or more members of a class may sue or be sued as representative parties on

behalf of all only if (1) the class is so numerous that joinder of all members is
impracticable, (2) there are questions of law or fact common to the class, (3) the
claims or defenses of the representative parties are typical of the claims or
defenses of the class, and (4) the representative parties will fairly and adequately
protect the interests of the class.

### 1. Numerosity

The parties agree that there are over 30,000 members of the settlement class, rendering

joinder impracticable.  While "[n]o magic number exists satisfying the numerosity requirement,"

Moskowitz v. Lopp, 128 F.R.D. 624, 628 (E.D. Pa. 1989), the number of plaintiffs present in this

case easily satisfies the 23(a)(1) requirement.  See, e.g., Stewart v. Abraham, 275 F.3d 220, 226-

27 (3d Cir. 2001) ("[G]enerally if the named plaintiff demonstrates that the potential number of

plaintiffs exceeds 40, the first prong of Rule 23(a) has been met."); Jones v. Commerce Bancorp,

Inc., 2007 U.S. Dist. LEXIS 52144, at *7-8 (D.N.J. July 16, 2007) ("Numerosity is satisfied

because there are more than 1700 putative class members.  There is no threshold number

necessary to satisfy the numerosity requirement, but courts in this Circuit generally hold that

classes of close to one hundred members are sufficient." (citing cases)).

### 2. Commonality

"The commonality requirement will be satisfied if the named plaintiffs share at least one

question of fact or law with the grievances of the prospective class."  Baby Neal for & by Kanter

v. Casey, 43 F.3d 48, 56 (3d Cir. 1994) (citing In re "Agent Orange" Prod. Liab. Litig., 818 F.2d

145, 166-67 (2d Cir. 1987); Weiss v. York Hosp., 745 F.2d 786, 808 (3d Cir. 1984)).  "Because

the requirement may be satisfied by a single common issue, it is easily met . . . ."  Id.  In the

instant litigation, the Named Plaintiffs, like the class Plaintiffs, allege that Defendants have

breached their fiduciary duties under ERISA in the selection and monitoring of Plan investments. Courts consistently have found that such a claim satisfies the commonality requirement.  See, e.g., Brooks v. Educators Mut. Life Ins. Co., 206 F.R.D. 96, 101 (E.D. Pa. 2002) ("The fact that this case involves a single claim under ERISA, 29 U.S.C. § 1132(a)(1), also supports a finding that the commonality prerequisite is satisfied.  Unlike a diversity-based class action, where a court must apply varying state laws for class members from different states, uniform federal law will apply to all class members here."); Banyai v. Mazur, 205 F.R.D. 160, 163 (S.D.N.Y. 2002) ("In general, the question of defendants' liability for ERISA violations is common to all class members because a breach of a fiduciary duty affects all participants and beneficiaries."). Indeed, this case presents many common questions, such as whether Defendants' conduct was a breach of fiduciary duty and whether this conduct caused financial harm to the Plans or Plan participants.  Thus, the commonality requirement is satisfied.

### 3. Typicality

"[T]ypicality entails an inquiry whether 'the named plaintiff's individual circumstances are markedly different or . . . the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based.'"  Eisenberg v. Gagnon, 766 F.2d 770, 786 (3d Cir. 1985) (quoting Weiss, 745 F.2d at 809 n.36).  As with the commonality requirement, "[t]he threshold for establishing typicality is low." Zlotnick v. Tie Commc'ns, Inc., 123 F.R.D. 189, 193 (E.D. Pa. 1988).  The Third Circuit has noted that "cases challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims."  Baby Neal, 43 F.3d at 58.  In the instant case, the Named Plaintiffs and

all other class members base their claims on Defendants' breach of fiduciary duty, resulting in improper investment into NYL proprietary funds. These claims challenge the same allegedly unlawful conduct, thus satisfying the typicality requirement.

### 4. Adequacy of Representation

"The adequacy of representation inquiry has two components intended to assure that the absentees' interests are fully pursued: it considers whether the named plaintiffs' interests are sufficiently aligned with the absentees', and it tests the qualifications of the counsel to represent the class." In re Gen. Motors Corp., 55 F.3d at 800 (citing Weiss, 745 F.2d at 811). As discussed above, the Court finds that the Named Plaintiffs' claims are typical of the class, and the Court can find no apparent conflict of interest. The Named Plaintiffs and all other Plaintiffs were participants in the Plans, and the parties represent that Defendants have no unique defenses against the claims of the Named Plaintiffs. With respect to the qualifications of counsel, "[c]ourts examining settlement classes have emphasized the special need to assure that class counsel: (1) possessed adequate experience; (2) vigorously prosecuted the action; and (3) acted at arm's length from the defendant." Id. at 801. As the Court concluded in its 2001 certification, class counsel posses ample qualifications and experience to pursue Plaintiffs' ERISA class action claims. Indeed, as the extensive docket in this case demonstrates, class counsel vigorously prosecuted this case and, under the supervision of Magistrate Judge Hart, entered into arm's length negotiations in order to reach the Settlement. In short, the Court is certain that class counsel "possess the expertise to litigate this matter effectively, as evidenced by the quality, timeliness and professional nature of their work" in this case. Whetman v. IKON (In re IKON Office Solutions Secs. Litig.), 209 F.R.D. 94, 103 (E.D. Pa. 2002)

## B. Rule 23(b) Requirements

The parties seek certification of the settlement class pursuant to Rules 23(b)(1)(B) and

(b)(2).[6]

### 1. Rule 23(b)(1)(B)

Under Rule 23(b)(1)(B), "class certification is appropriate when adjudication of separate,

individual actions might be dispositive of the interests of class members who are not parties to

the action." Godshall v. Franklin Mint Co., 2004 U.S. Dist. LEXIS 23976, at *9 (E.D. Pa. Dec.

1, 2004). Because Plaintiffs are alleging a breach of fiduciary duty, any finding as to Defendants'

alleged breach in an individual suit will affect the interests of Plan participants not parties to the

suit. See, e.g., Thomas v. SmithKline Beecham Corp., 201 F.R.D. 386, 397 (E.D. Pa. 2001)

(finding Rule 23(b)(1)(B) certification appropriate because "the plaintiffs claim that the

defendants have breached their fiduciary duties under ERISA," and "[a]ny decision regarding

whether the defendants breached their fiduciary duties would necessarily affect the interests of

other participants"); In re IKON Office Solutions, Inc. Sec. Litig., 191 F.R.D. 457, 466 (E.D. Pa.

2000) (certifying a class pursuant to Rule 23(b)(1) since, "given the nature of an ERISA claim

which authorizes plan-wide relief, there is a risk that failure to certify the class would leave

future plaintiffs without relief"); Kane v. United Indep. Union Welfare Fund, 1998 U.S. Dist.

---

[6]     Although the parties agree that Rule 23(b)(3) certification also would be appropriate, the Court will not consider certification under that subsection because Defendants have not agreed to settlement with a 23(b)(3) class. Moreover, a class that can be certified pursuant to Rules 23(b)(1) and (b)(2) should not be treated as a 23(b)(3) class action. See, e.g., Stoetzner v. U.S. Steel Corp., 897 F.2d 115, 119 (3d Cir. 1990) ("[A]n action maintainable under both (b)(2) and (b)(3) should be treated under (b)(2) to enjoy its superior res judicata effect and to eliminate the procedural complications of (b)(3), which serve no useful purpose under (b)(2)." (quoting Wetzel v. Liberty Mut. Ins. Co., 508 F.2d 239, 253 (3d Cir. 1975))).

LEXIS 1965, at *25 (E.D. Pa. Feb. 23, 1998) (certifying an ERISA class action pursuant to 23(b)(1)(B) because an action brought to remedy breaches of fiduciary duty affects all plan participants).  The Court therefore certifies the class pursuant to Rule 23(b)(1)(B).

### 2. Rule 23(b)(2)

"Plaintiffs must make two showings in order to proceed under Rule 23(b)(2).  First, the complaint must seek relief which is predominantly injunctive or declaratory. . . . Second, plaintiffs must complain that defendants 'acted or refused to act on grounds generally applicable to the class.'"  Thomas, 201 F.R.D. at 397 (citation omitted) (quoting Fed. R. Civ. P. 23(b)(2)). In the instant case, Plaintiffs seek a declaratory judgment that Defendants violated their ERISA fiduciary duties; an injunction preventing Defendants from violating ERISA and/or the terms of the Plans; and other forms of relief, including appointment of an independent fiduciary to administer the Plans, an order prohibiting Defendants from serving as trustees or fiduciaries for other plans, disgorgement of profits Defendants realized through the use of Plan assets, and an order under ERISA compelling Defendants to remedy all losses to the Plans.  See Revised Third Am. Compl. § XI, ¶¶ 2-4.  While disgorgement of profits or remedy of plan losses would involve monetary rather than declaratory or injunctive relief,[7] the Court finds that any monetary relief is "incidental" to the primary relief sought and accordingly does not preclude certification pursuant to Rule 23(b)(2).  Although the Third Circuit has not articulated a test for determining whether monetary damages are "incidental," courts in this circuit have found that damages are incidental

---

[7]    An action solely or primarily for money damages may not be maintained as a Rule 23(b)(2) class action.  See, e.g., In re Sch. Asbestos Litig., 789 F.2d 996, 1008 (3d Cir. 1986). Moreover, the fact that a potential class requests injunctive relief does not render 23(b)(2) certification proper if claims for money damages predominate.  See Brooks, 206 F.R.D. at 104.

if they:

> (1) 'flow directly from liability to the class as a whole on the claims forming the basis for the injunctive or declaratory relief;' (2) are 'capable of computation by means of objective standards and not dependent in any significant way on the intangible, subjective differences of each class member's circumstances;' (3) 'should not require additional hearings to resolve the disparate merits of each individual's case,' nor 'introduce new and substantial legal or factual issues' entailing 'complex individualized determinations;' and (4) 'will, by definition, be more in the nature of a group remedy.'

Mulder v. PCS Health Sys., 216 F.R.D. 307, 319 (D.N.J. 2003) (quoting Allison v. Citgo Petroleum Corp., 151 F.3d 402, 415 (5th Cir. 1998)).

In the instant case, any disgorgement of profits or remedy of Plan losses would stem directly from the claim seeking declaratory relief—that Defendants violated fiduciary duties imposed on them by ERISA.  All monetary amounts would be objectively calculable and could be distributed to the Plans and/or Plan participants without holding additional hearings using mechanical calculations, such as each participant's account holdings for the relevant time periods.  Because any monetary relief would flow to the Plans and Plan participants as a group remedy, these damages are incidental to the declaratory and injunctive relief sought.  See id. (finding certification pursuant to Rule 23(b)(2) appropriate because damages were "incidental" where the complaint sought, inter alia, declaratory relief, injunctive relief, and an order "granting equitable relief including (a) an accounting of all illegal profits, (b) establishing a constructive trust on behalf of all affected employee benefit plans, and (c) ordering [the defendant] to disgorge all illegal profits into a constructive trust to be 'distributed appropriately to the affected employee benefit plans'").  Moreover, Defendants' alleged conduct applies equally to all Plaintiffs, as any breach of fiduciary duty to the Plans would affect all Plan participants in the same manner.

-13-

Accordingly, the Court finds certification pursuant to Rule 23(b)(2) appropriate.[8]


## IV. NOTICE

Pursuant to Federal Rule of Civil Procedure 23(e)(1)(B), this Court "must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise." Additionally, in order to satisfy due process concerns, "notice to class members must be 'reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" Lachance v. Harrington, 965 F. Supp. 630, 636 (E.D. Pa. 1997) (quoting Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)). To meet this standard, "notice must inform class members of (1) the nature of the litigation; (2) the settlement's general terms; (3) where complete information can be located; and (4) the time and place of the fairness hearing and that objectors may be heard." In re Cendant Corp. Sec. Litig., 109 F. Supp. 2d 235, 254 (D.N.J. 2000) (citing In re Prudential Ins. Co. of Am. Sales Practices Litig., 962 F. Supp. 450, 527 (D.N.J. 1997), aff'd, 148 F.3d 283, 311 (3d Cir. 1998)).

The Court finds that the proposed notice adequately informs potential class members in clear, understandable language. First, the notice provides a summary of the content of the lawsuit and its procedural history. See Notice of Proposed Settlement of Class Action and Settlement Hearing § II, attached to the Motion at Ex. 3. Second, the notice details the history of

---

[8]    "Pursuant to Federal Rule of Civil Procedure 23(c)(1)(C), a court retains the discretion to decertify or modify a class at any time before final judgment is entered." Smith v. Dominion Bridge Corp., 2007 U.S. Dist. LEXIS 26903, at *19 (E.D. Pa. Apr. 11, 2007). At the Settlement Hearing, the Court can and will consider challenges to the propriety of certification pursuant to 23(b)(1)(B) and (b)(2).

settlement negotiations and explains the settlement terms, including instructions on filing

necessary claim forms.  See id. §§ III, IV.  The notice also provides instructions on obtaining

information relevant to the litigation and gives contact information for inquiries concerning the

notice or the Settlement.  See id. § VII.  Finally, the notice details the process for appearing at the

Settlement Hearing, explains that class members are not permitted to opt out of the settlement,

and reiterates claim form requirements for former 401(k) Plan participants.  See id. § V.

The Court also finds that the proposed method of disseminating the notice satisfies due

process and Rule 23(e) concerns.[9]  As explained in the Motion, Defendants are compiling the last

known addresses and social security numbers for each of the members of the proposed settlement

class.  After preliminary approval of the Settlement, this information will be transferred to the

Settlement Administrator (an accounting and class action administration firm located in

Philadelphia, PA), which will confirm or update the postal addresses and send the final text of

the notice (and claim form, when applicable) via first class mail to each member of the class.  If

any notices are returned as undeliverable, the Settlement Administrator will take further steps to

correct known addresses and resend notices to those recipients.  A copy of the settlement notice

also will be posted on the settlement website, and within ten business days after the mailing of

notices, a copy of the notice will be published in the National edition of USA Today for one

weekday.  Because class counsel believe that using the last known address information in

conjunction with the Settlement Administrator's efforts to update contact information will

---

[9]    Because the Court has certified the class pursuant to Rules 23(b)(1)(B) and (b)(2) rather than Rule 23(b)(3), the stringent notice standard of Rule 23(c)(2)(B), which requires "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort," does not apply.  See, e.g., Zimmer Paper Prods., Inc. v. Berger & Montague, P.C., 758 F.2d 86, 90 (3d Cir. 1985).

provide notice to virtually all members of the settlement class, the parties feel that one

publication will suffice to apprise any remaining class members of the action.  The Court agrees

with the parties that the proposed methods of effectuating notice satisfy due process and Rule 23

requirements.  See Whetman, 209 F.R.D. at 101 (holding that notice disseminated by first-class

mail to the last known addresses of potential class members, one-time publication in The Wall

Street Journal, and a description on counsel's website satisfied both due process and Rule 23

requirements).


**V.  CONCLUSION**

For the reasons discussed above, Plaintiffs' Motion will be granted.  An appropriate

Order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JAMES A. MEHLING, et al.** | : | **CIVIL ACTION** |
| | : | |
| v. | : | **NO. 99-5417** |
| | : | |
| **NEW YORK LIFE INSURANCE CO., et al.** | : | |

**ORDER**

AND NOW, this 24th day of October, 2007, upon consideration of Plaintiffs' Unopposed

Motion and Supporting Memorandum for Entry of Order with Respect to Certification of

Modified Settlement Class and Notice and Hearing on Proposed Class Action Settlement (docket

nos. 134, 135), it is **ORDERED** as follows:

1.  To the extent defined in the March 22, 2007 Settlement Agreement, the terms in this

Order shall have the meanings set forth therein.

2.  Plaintiffs' Motion for Preliminary Approval of the Proposed Settlement is

**GRANTED**.  The terms of the Settlement Agreement, and the Proposed Settlement provided for

therein, are approved preliminarily, subject to further consideration at the Settlement Hearing

described in Paragraph 9 of this Order.

3.  Plaintiffs' Motion for Certification of Modified Settlement Class is **GRANTED**.  This

action may proceed as a class action for settlement purposes.  The class is certified pursuant to

Federal Rules of Civil Procedure 23(b)(1)(B) and 23(b)(2).  Consistent with this form of

certification, all members of the settlement class are mandatory members and may not opt out of

the class.

4.  Named Plaintiffs Lee A. Bowers and Frances B. Maane are hereby appointed as the

representatives of the settlement class.  Attorneys Eli Gottesdiener, Marc I. Machiz, and Alan M. Sandals are hereby appointed as counsel for the settlement class (hereinafter "Class Counsel") pursuant to Federal Rule of Civil Procedure 23(g)(1).

5.  In accordance with the terms of the Settlement Agreement, as soon as practicable after the entry of this Order, but in no event later than Monday, November 19, 2007, Class Counsel shall cause to be mailed by first class mail the Notice of Proposed Settlement of Class Action and Settlement Hearing (the "Settlement Notice") and the Former 401(k) Plans Plaintiffs Claim Form, in substantially the same form as those annexed to the Settlement Agreement as Exhibits 3-4, to the last known address of the settlement class members unless an updated address is obtained by the Settlement Administrator.  The Settlement Notice shall be sent to all members of the settlement class.  The Former 401(k) Plaintiffs Claim Form shall be sent to each 401(k) Plans Plaintiff who no longer maintained an account balance in either of the 401(k) Plans as of the date of the mailing information list for the Settlement Notice, and shall advise the recipient that he or she must file a completed 401(k) Plans Plaintiffs Claim Form by March 21, 2008, in order to participate in the distribution pursuant to the Plan of Allocation set forth in the Settlement Agreement.  New York Life Insurance Co. (the "Company") shall provide social security numbers of the settlement class members in a confidential manner to Class Counsel.  Class Counsel and the Settlement Administrator shall treat this information as confidential and use social security numbers solely for the purpose of confirming or updating last known addresses of settlement class members for mailing of the Settlement Notice, verifying identities of settlement class members, processing claims, and/or complying with tax laws, and for no other purpose. The Settlement Administrator shall use its best efforts to locate any settlement class member

whose notice is returned.  Additionally, not later than ten (10) business days after the mailing of the Settlement Notice, Class Counsel shall cause to be published one time, in a weekday national edition of USA Today, the Publication Notice, in substantially the same form as that annexed to the Settlement Agreement as Exhibit 5.  Class Counsel also shall establish and maintain a toll-free telephone number in accordance with the procedures set forth in Paragraph 2.5(d) of the Settlement Agreement.

6.  On or before January 11, 2008, Class Counsel shall serve and file a sworn statement evidencing compliance with the provisions of Paragraph 5 of this Order concerning the mailing of the Settlement Notice and the publication of the Publication Notice.

7.  For purposes of effectuating the notice provided for in Paragraph 5, Class Counsel shall lease and maintain a post office box in the name of the litigation for the receipt of all responses to the mailed Settlement Notice and Publication Notice, and shall preserve all entries of appearance, statements, inquiries, objections, and any other written communications from members of the settlement class or any other person in response to the Notices until further order of the Court.  On or before January 11, 2008, Class Counsel shall file with the Court copies of any entries of appearance and statements in support of or opposition to the proposed Settlement, or their fee and expense request, proposed Administrative Expenses, or compensation to the Named Plaintiffs which are received and furnish copies thereof to counsel for Defendants.

8.  Class Counsel shall file with the Court, serve, and post on the settlement website their Motion for Final Approval of the Proposed Settlement, and their Petition for an Award of Attorneys' Fees and Reimbursement of Expenses, on or before December 10, 2007.

9.  Pursuant to Federal Rule of Civil Procedure 23, a hearing (the "Settlement Hearing")

-19-

shall be held before the undersigned at 2:00 p.m., on **Tuesday, January 22, 2008**, in the United States Courthouse, Courtroom 15-B, United States District Court for the Eastern District of Pennsylvania, 601 Market Street, Philadelphia, PA.  The hearing will be held to determine the fairness, reasonableness, and adequacy of the proposed Settlement, the dismissal with prejudice of the released claims of the members of the settlement class, and the requests of Class Counsel for an award of attorneys' fees and reimbursement of expenses, proposed Administrative Expenses, or compensation to Named Plaintiffs.

10.   Any member of the settlement class may appear at the Settlement Hearing, in person or by counsel, and be heard to the extent permitted by the Court in support of, or in opposition to, the fairness, reasonableness, and adequacy of the proposed Settlement, the requested award of attorneys' fees and reimbursement of expenses, proposed Administrative Expenses, and/or the requested award of compensation to the Named Plaintiffs; provided, however, that no person will be heard, and no papers or briefs submitted by any such person will be accepted or considered by the Court, unless such person: (a) has filed with the Clerk of Court, so as to be postmarked on or before January 4, 2008, at the post office box referred to in paragraph 7, a written notice of such person's intention to appear together with a written statement that indicates the specific basis for such opposition or support along with any supporting documentation; and, (b) has served, so as to be postmarked on or before January 4, 2008, copies of such notice of intention to appear, statement, and documentation together with copies of any other papers or briefs which such person files with the Court, either in person or by mail upon (1) Alan M. Sandals, Esq., Sandals & Associates, P.C., One South Broad Street, Suite 1850, Philadelphia, PA 19107, co-counsel for Plaintiffs; and (2) Michael L. Banks, Esq., Morgan, Lewis & Bockius, LLP, 1701 Market Street,

Philadelphia, PA 19103, co-counsel for Defendants.

11.  The Court expressly reserves the right to adjourn the Settlement Hearing from time to time without further direct notice to the members of the settlement class.

12.  Pending final determination of whether the Settlement Agreement should be approved, no Plaintiff may directly, representatively, or in any other capacity, commence any action or proceeding in any court or tribunal asserting any of the released claims against the Defendants, the Related Parties, or the Plans.

13.  In the event that the Settlement Agreement is cancelled or terminated pursuant to Paragraph 6.6 of the Settlement Agreement, then (a) this Preliminary Order shall be rendered null and void and shall be vacated and of no further force or effect, without prejudice to any party, and Plaintiffs and Defendants shall be deemed to have reverted to their respective statuses prior to the execution of the Settlement Agreement, and they shall proceed as if the Settlement Agreement had not been executed and the related orders had not been entered, preserving all of their respective claims and defenses in the Action; and (b) Class Counsel and Defendants' Counsel shall within five (5) business days of the settlement termination date, provide the Escrow Agent identified in the parties' Escrow Agreement with a fully executed written notice directing the Escrow Agent to release immediately all monies in the Escrow Fund exclusively to the Company (or any other entity identified by the Company for this purpose), excluding (i) any amounts designated in such notice up to a maximum of $100,000 as having been paid or having been incurred and remaining to be paid as Administrative Expenses pursuant to Paragraphs 2.5(e) and 4.1 of the Settlement Agreement, and (ii) any Taxes and Tax Expenses specified in such notice as having been paid or having been incurred and remaining to be paid on the income on

the Escrow Fund prior to release which are to be paid from the Escrow Fund prior to release by

the Escrow Agent.

       13.  Without further order of the Court, the parties may agree to reasonable extensions of

time to carry out any of the provisions of the Settlement Agreement.


**BY THE COURT:**


 /s/ **Bruce W. Kauffman**

**BRUCE W. KAUFFMAN,  J.**